UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUNIOR WILLIAMS, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>KAWASAKI MOTORS CORP., U.S.A., )<br>et al., )<br>    Defendants. ) | Civil Action No. 16-30142-MGM |

<u>MEMORANDUM AND ORDER REGARDING PLAINTIFFS' *AMENDED* MOTION
TO AMEND COMPLAINT</u>
(Dkt. No. 114)

ROBERTSON, U.S.M.J.

    I.     INTRODUCTION

This matter is before the court on the motion on behalf of the estate of Junior Williams for leave to file a fourth complaint ("the Motion") which would add wrongful death claims and a survival action on behalf of the estate of Junior Williams through Treslan Williams, who has been duly appointed the representative of Junior Williams's estate. The proposed amended complaint would also add loss of consortium claims on behalf of Junior Williams's daughter through her mother, Tierra Sherman, who has been appointed her conservator. Finally, the proposed complaint would substitute as plaintiff Treslan Williams as personal representative of the estate of Junior Williams (Dkt. No. 114-1). Defendants Kawasaki Motors Corp., U.S.A., and Kawasaki Heavy Industries, Ltd. (collectively, Kawasaki or Kawasaki defendants) oppose so much of the Motion as seeks to add a wrongful death claim on behalf of Junior Williams's estate and loss of consortium claims on behalf of his daughter and assert that Tierra Sherman would be an improper plaintiff in a wrongful death or survival action because Junior Williams's daughter is not an administrator or representative of his estate. Kawasaki does not oppose the addition of

1

the survival action in Count V of the proposed complaint or the substitution of Treslan Williams as plaintiff on behalf of the estate of Junior Williams. Defendant Springfield Motor Sports LLC opposes so much of the Motion as seeks to add a wrongful death claim to the complaint. For the reasons set forth below, the court GRANTS so much of the Motion as seeks to add Count IV for wrongful death to the extent the claim is asserted on behalf of Junior Williams's estate, DENIES so much of the Motion as seeks to add loss of consortium claims through Tierra Sherman on behalf of Junior Williams's daughter in Counts I-V, and GRANTS so much of the Motion as seeks to substitute as plaintiff Treslan Williams as personal representative of the estate of Junior Williams and to add a Survival Action on behalf of the estate of Junior Williams.

II. RELEVANT BACKGROUND

Junior Williams filed his initial complaint in the Hampden County Superior Court on July 26, 2016 (Dkt. No. 10 at 1). He filed an amended complaint on September 17, 2016, and a second amended complaint on December 12, 2016 (Dkt. Nos. 17, 44). The initial and amended complaints asserted that Junior Williams was severely injured in a July 30, 2013 accident that occurred while he was riding a Kawasaki motorcycle in Springfield (e.g., Dkt. No. 44 at 2, ¶ 5). His second amended complaint stated claims against all defendants of strict products liability (Count I); negligence (Count II); and breach of warranty (Count III) (Dkt. No. 44). The Motion represents that Junior Williams "passed away on or about July 27, 2018" (Dkt. No. 114 at 1). It is alleged, in the proposed amended complaint, that the death of Junior Williams was "directly related" to the motorcycle accident that occurred five years earlier and that he "took his own life as a result of his severe burn, emotional and psychological injuries" (Dkt. No. 114-1 at 3, ¶ 6). Documents submitted to the court show that Treslan Williams has been duly appointed as

personal representative of the estate of Junior Williams (Dkt. No. 114-2) and that Tierra Sherman has been duly appointed a conservator of Junior Williams's minor daughter (Dkt. No. 114-3).

Because there is no dispute that Treslan Williams as representative of the estate of Junior Williams should be substituted as the plaintiff in this action, the court refers to Treslan Williams as Plaintiff hereinafter.

III. DISCUSSION

> A motion to amend a complaint will be treated differently depending on its timing and the context in which it is filed. . . . The default rule mandates that leave to amend is to be "freely given when justice so requires" . . . unless the amendment "would be futile, or reward, *inter alia,* undue or intended delay." As a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting. . . . Once a scheduling order is in place [if leave to amend is sought after the cut-off date established in the order], the liberal default rule is replaced by the more demanding "good cause" standard of Fed. R. Civ. P. 16(b).

*Steir v. Girl Scouts of the USA,* 383 F.3d 7, 11-12 (2004) (internal citations omitted).

"[T]he 'spirit of the rule' dictates a preference for decisions 'on the merits, not because of missteps by counsel in pleading.'" *J.S. McCarthy Co. v. Braus Diecutting & Converting Equip., Inc.*, 226 F.R.D. 14, 17 (D. Me. 2005) (quoting *Allendale Mut. Ins. Co. v. Rutherford*, 178 F.R.D. 1, 3 (D. Me. 1998) (quoting *Sweeney v. Keystone Provident Life Ins. Co.*, 578 F. Supp. 31, 34 (D. Mass. 1983))); *see also Torres-Alamo v. Puerto Rico*, 502 F.3d 20, 25 (1st Cir. 2007) (Rule 15(a) embodies a liberal standard for judging a motion for leave to file an amended complaint). "In considering a motion for leave to amend . . . the trial court must first consider whether the proposed new claims are futile[.] . . . If the claims are not futile, then the trial court must consider whether, given the timing of the motion for leave to amend, such prejudice to the defendant would arise from granting the motion that the motion should be denied on that ground." *Smith v. Mitre Corp.*, 949 F. Supp. 943, 945 (D. Mass. 1997) (citations omitted). "In determining

whether the plaintiffs unduly delayed in filing their motion to amend, the focus . . . is on whether allowing the amendment would unfairly prejudice the defendants." *Bond Opportunity Fund II, LLC v. Heffernan*, 340 F. Supp. 2d 146, 155-56 (D.R.I. 2004); *see Mitre Corp.*, 949 F. Supp. at 945. "Amendment of pleadings is largely a matter within the discretion of the district court." *Guest-Tek Interactive Entm't Inc. v. Pullen*, 731 F. Supp. 2d 80, 92 (D. Mass. 2010).

    A. <u>Wrongful Death Claims</u>

The defendants oppose Plaintiff's quest to add wrongful death claims following Junior Williams's suicide on grounds of futility. "If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." *Hatch v. Dept. for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001); *see Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006) ("In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)."). Thus, in this context, "[f]utility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996); *see also Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000) ("a proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss").

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a "'complaint must contain enough factual material to raise a right to relief above the speculative level … and state a facially plausible legal claim,'" *Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 780 (1st Cir. 2014) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)), "accept[ing] as true well-pleaded facts in the complaint and draw[ing] all reasonable inferences in the pleader's

4

favor. *Id.* (citing *Tasker v. DHL Rev. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)). In resolving a motion to dismiss, the court employs a two-step approach. *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014) (citing *Ocasio-Hernández*, 640 F.3d at 12).

> First, [the court] "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (internal quotation marks omitted). Second, [the court] "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted).

*Medina-Velázquez*, 767 F.3d at 108. While "a complaint need not plead facts sufficient to make a prima facie case or allege all facts necessary to succeed at trial," *id.* (citing *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 717-18 (1st Cir. 2014)), the elements of a prima facie case "form[] 'part of the background against which a plausibility determination should be made.'" *Id.* (quoting *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013)). "An analysis of plausibility is '"a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."'" *Id.* at 109 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)). That said, "the court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Ocasio-Hernández*, 640 F.3d at 12 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] court [may not] attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if … a recovery is very remote and unlikely.'" *Id.* at 12-13 (quoting *Twombly*, 550 U.S. at 556).

Junior Williams died on or around July 27, 2018. Counsel for Plaintiff moved to stay the action on August 8, 2018 pending the appointment of an appropriate representative for Junior Williams's estate (Dkt. No. 102), which motion was granted by the court (Dkt. No. 103). The case was stayed through November 7, 2018 (Dkt. No. 107). There is no question that Plaintiff

5

has moved on a timely basis to add a wrongful death claim to his complaint and the defendants do not contend otherwise. Rather, the defendants oppose the addition of wrongful death claims on futility grounds because Junior Williams deliberately took his own life. (Dkt. No. 115 at 3-5; Dkt. No. 116 at 3-9). The parties agree that Massachusetts law applies in this diversity case. Wrongful death actions in Massachusetts are statutory. The applicable statute provides, in pertinent part, as follows:

> A person who (1) by his negligence causes the death of a person . . . under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted . . . or (5) is responsible for a breach of warranty . . . which results in an injury to a person that causes death, shall be liable in damages[.]

Mass. Gen. Laws ch. 229, § 2. Under the wrongful death statute, Plaintiff must prove by a preponderance of the evidence that the defendants' "negligence or willful, wanton, or reckless act caused [Junior Williams's] death, or . . . [they] are 'responsible for a breach of warranty' . . . that caused [his] death." *Evans v. Lorillard Tobacco Co.*, 990 N.E.2d 997, 1010 (Mass. 2013) (quoting Mass. Gen. Laws ch. 106, §2-314(2)(c)). To succeed on a breach of warranty claim, a plaintiff must prove that the product defect on which the claim is based caused the injury that is the basis of the suit. *See Fernandes v. Union Bookbinding Co.*, 507 N.E.2d 728, 734 (Mass. 1987).

Under Massachusetts law, "suicide may be viewed as an independent intervening cause between a defendant's conduct and the decedent's death." *Gillespie v. Gillespie*, No. 09-P-2174, 2011 Mass. App. LEXIS 156, at *3 (Mass. App. Ct. Feb. 7, 2011) (unpublished) (citing *Carney v. Tranfaglia*, 785 N.E.2d 421, 425 (Mass. App. Ct. 2003)). "No liability attaches where – even though a defendant negligently caused injury to the decedent – the decedent's suicide was not the product of an 'uncontrollable impulse' or 'accomplished in delirium or frenzy,' but rather the

decedent had 'conscious volition to produce death' or 'knowledge of the physical nature and consequences of the act.'" *Id.,* at *3-4 (quoting *Daniels v. New York, N.H. & H.R. Co.*, 67 N.E. 424, 426 (Mass. 1903)). On the basis of this authority, the defendants argue that, as a matter of law, Junior Williams's suicide is an intervening cause that makes futile any attempt by Plaintiff to assert wrongful death claims against them (Dkt. No. 115 at 3-5; Dkt. No. 116 at 3-9).

In the court's view, the allegations in Plaintiff's proposed third amended complaint are – albeit barely – sufficient to state a wrongful death claim under Massachusetts law. A suicide is not a categorical bar to a wrongful death action when the decedent has sustained life-altering injuries in a serious accident. Rather, the question, as posed in *Freyermuth v. Lutfy*, 382 N.E.2d 1059, 1065 (Mass. 1978), is whether the evidence would warrant a finding that Junior Williams "on account of mental derangement precipitated by the accident, was incapable of resisting the impulse to destroy [him]self." Plaintiff has alleged, in barebones fashion, that Junior Williams took his life as a result of his "severe burn, emotional, and psychological injuries," that the accident caused Junior Williams's death by suicide, and that the defendants, either by negligence or breach of warranty, caused the accident (Dkt. No. 114-1). It is true that the proposed amended complaint does not set forth the circumstances leading up to Junior Williams's death by suicide or provide facts about his mental state preceding the act. But, in the context of this case, Plaintiff has alleged enough for the court to conclude that the proposed third amended complaint asserts a facially plausible claim on behalf of the estate of Junior Williams. *See Ocasio-Hernández*, 640 F.3d at 12. Whether, with a five-year gap between the accident and the Junior Williams's suicide, Plaintiff can muster facts that will enable him to succeed on this claim, may be revisited at summary judgment.

B. <u>Loss of Consortium Claims</u>

Under Massachusetts law, the child of a parent injured by a third party's negligence may bring a loss of consortium claim for reasonable support, maintenance, and comfort that the parent would have provided but for the injury. *See, e.g., Angelini v. OMD Corp.*, 575 N.E.2d 41, 42, 46 (Mass. 1991). In the case at bar, Junior Williams's initial complaint asserted claims only on his own behalf. As long as Junior Williams's minor daughter was conceived before he suffered the injuries in his July 27, 2013 accident, she was entitled to assert a loss of consortium claim based on her father's injuries in the initial complaint. *See id.* Junior Williams's first and second amended complaints, filed on September 13, 2016 and December 12, 2016 respectively, also omitted mention of any loss of consortium claims on behalf of Junior Williams's daughter. Again, as long as she was conceived prior to her father's injury, there is no reason loss of consortium claims could not have been asserted in these prior amended complaints. Further, the court's February 2, 2017 scheduling order set a May 3, 2017 deadline for filing motions for leave to amend the pleadings to add claims, defenses, or parties (Dkt. No. 58).

"'[W]hen considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some valid reason for [the] neglect and delay.'" *Invest Almaz v. Temple-Inland Forest Prods. Corp.*, 243 F.3d 57, 71 (1st Cir. 2001) (quoting *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52 (1st Cir. 1998)); *see also Steir*, 383 F.3d at 11-12. "'[P]eriods of fourteen months, fifteen months, and seventeen months' have been deemed to constitute 'considerable time.'" *Moore v. Nstar Elec. & Gas Co.*, 264 F. Supp. 3d 292, 295 (D. Mass. 2017) (quoting *In re Lombardo*, 755 F.3d 1, 3 (1st Cir. 2014)). Here, the delay is more than twenty-seven months (July 2016 to November 2018). The accident was in 2013. Movants have not offered any explanation as to why these loss of consortium claims were not timely asserted. As the Kawasaki defendants point out, if the claims are added,

there would need to be additional discovery concerning the relationship between Junior Williams and his daughter, *see, e.g., Angelini*, 757 N.E.2d at 46, and they are irremediably prejudiced in this regard. They had no reason to question Junior Williams about this topic at length when they took his deposition, and they cannot do so at this point (Dkt. No. 115 at 8). In all of the circumstances, permitting the movants to add loss of consortium claims on behalf of Junior Williams's daughter at this late date is not warranted. *See U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009) (affirming trial court's denial of motion for leave to amend complaint; "[p]laintiffs do not get a fourth chance to try to get it right"); *Moore*, 264 F. Supp. 3d at 295 (denying motion for leave to amend complaint because, among other things, "such action would be unjustifiably detrimental to defendant"); *Lukas v. United States*, 133 F. Supp. 3d 284, 288 (D. Mass. 2015) (denying motion for leave to amend complaint to add claims against a new defendant nine months after initial complaint was filed when plaintiff failed to explain the delay in seeking to add the claims).[1]

    IV.    CONCLUSION

For the foregoing reasons, the court GRANTS so much of the Motion as seeks to add Count IV for wrongful death to the extent the claim is asserted on behalf of Junior Williams's estate, DENIES so much of the Motion as seeks to add loss of consortium claims through Tierra Sherman on behalf of Junior Williams's daughter in Counts I-V, and GRANTS so much of the Motion as seeks to substitute Treslan Williams as plaintiff on behalf of the estate of Junior

---

[1] Further, the court agrees with the Kawasaki defendants that "Massachusetts does not recognize a separate tort for loss of consortium in wrongful death cases. The only way to collect damages for loss of consortium is through [the Massachusetts wrongful death statute]. And only the administrator of the estate can bring an action seeking loss of consortium." *Litif v. United States*, 682 F. Supp. 2d 60, 82 (D. Mass. 2010) (citing *Hallett v. Town of Wrentham*, 499 N.E.2d 1189, 1192 (Mass. 1986)). For this reason, Treslan Williams as representative of Junior Williams's estate is the only proper plaintiff as to Count IV of the proposed amended complaint.

Williams and to add a Survival Action on behalf of the estate of Junior Williams. Treslan Williams is directed to file forthwith an amended complaint that conforms to this ruling, noting in the caption of the amended complaint that leave to file was granted on the date of this motion. It is so ordered.

Dated: December 18, 2018 /s/ Katherine A. Robertson  
KATHERINE A. ROBERTSON  
U.S. MAGISTRATE JUDGE